**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATSY LEVANG, CHERYL TUCK-SMITH, SUSAN JENNINGS, MARGO KNORR, KAREN POPE, and ANN WITT,** | : | |
| | : | |
| | : | |
| | : | |
| *Plaintiffs*, | : | **Case No. 2:24-cv-00316-MHW-KAJ** |
| | : | |
| v. | : | **Judge Michael H. Watson** |
| | : | |
| **KAPPA KAPPA GAMMA FRATERNITY, MARY PAT ROONEY, MARIA BROWN, NANCY CAMPBELL, BARB GOETTLEMAN,** [1] **LIZ WONG, KYLE DONNELLY, and BETH BLACK,** | : | **Magistrate Judge Kimberly A. Jolson** |
| | : | |
| | : | |
| | : | |
| | : | |
| *Defendants*. | : | |

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

---

## INTRODUCTION

Plaintiffs' Response to Defendants' Motion to Dismiss puts the central principle governing this litigation (and the Wyoming litigation that preceded it) in stark relief: Plaintiffs want federal courts to tell Kappa Kappa Gamma ("Kappa") how it must operate. They expand at length on their opinion of how Kappa's Fraternity Council should determine its interpretations of its rules and under what circumstances members should be dismissed for violating Kappa's policies. Courts, however, do not decide those matters for private voluntary organizations; their leadership and governing documents do.

Kappa's governing documents doom Plaintiffs' core claims. They provide that Fraternity Council is charged with interpreting the documents and impose no requirement to put those interpretations up for an organization-wide discussion or vote. Fraternity Council issued and

---

[1] Plaintiffs misspelled Ms. Goettelman's name in their filing. The correct spelling is Goettelman.

1

publicized its interpretation of an undefined term in the governing documents.  They provide that all members accused of violating Kappa's policies must be afforded due process before they are dismissed from the organization.  Kappa afforded Plaintiffs Levang and Tuck-Smith exactly the procedure the governing documents required after the two Plaintiffs violated Kappa policies.  In light of those facts, the Court has no role to play in either Kappa's policy of admitting transgender women or the dismissal of Plaintiffs Levang and Tuck-Smith for violating policy.  Moreover, Plaintiffs' derivative claims are also barred by *res judicata* and the statute of limitations.

Plaintiffs' other legal claims are frivolous.  Their free-speech claim is premised on an interpretation of the Ohio Constitution that the Ohio Supreme Court has conclusively rejected, and their defamation per se claim is based on true statements.  The Court has no role in adjudicating this dispute over the governance of a private voluntary organization and should dismiss each of Plaintiffs' claims with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail to State Derivative Claims

As discussed in Defendants' moving papers, Plaintiffs' derivative claims fail for a number of reasons.  First, Plaintiffs cannot re-litigate claims the District Court in Wyoming already decided, even though they style their claims slightly differently.  Second, the claims are barred by the statute of limitations because they concern the Fraternity Council's interpretations of Bylaws that were made nearly a decade ago.  Third, the derivative claims fail on the merits as a matter of law.  Plaintiffs also cannot save these claims by folding claims related to the dismissal of two individual members into derivative claims purportedly brought on behalf of the entire organization.

## A.    *Res Judicata* **Bars the Derivative Claims**

None of Plaintiffs' attempts to distinguish their claims from the claims at issue in the prior Wyoming litigation are availing.[2]  The thrust of Plaintiffs' argument against the application of *res judicata* to the derivative claims is that Plaintiffs have fashioned their claims differently than the Wyoming derivative plaintiffs and have sued different defendants.  Specifically, Plaintiffs note that they sued Kappa's entire Fraternity Council, whereas only Defendant Rooney was sued in the Wyoming matter.  They also inaccurately try to cabin the derivative claims asserted in the Wyoming case to only issues related to the Kappa chapter to which the plaintiffs belonged.

The Wyoming Complaint, however, alleged wrongdoing against the entirety of Fraternity Council relating to their interpretation of the term "woman" and issuance of that interpretation, sought an injunction against Fraternity Council to remove them from their positions, and blamed Fraternity Council's actions for an alleged resulting decline in membership and alumnae giving and harm to Kappa across the country:

> 89.    Plaintiffs bring this action derivatively in the right and for the benefit of Kappa Kappa Gamma to redress the breaches of fiduciary duty and other violations of law by Defendant Mary Pat Rooney and other members of the Fraternity Council.

> 97.    . . . Defendant Rooney and the other members of the Fraternity Council have been actively involved in the development and dissemination of the revised membership policy in flagrant disregard of the Sorority's corporate governance documents.

> 98.    Defendant Rooney, with the other members of the Fraternity Council, served as the Board of Directors for the Sorority during the wrongful behavior alleged

---

[2] As far as cases Defendants have been able to locate, the Wyoming case was only the sixth decision to issue in a shareholder derivative claim under Ohio Revised Code 1702.12(I)(1)(c), the statute that allows members of a non-profit to sue that organization derivatively.  For the other five cases, one was dismissed against the members because they had no standing, and the other four were dismissed for failing to satisfy the procedural prerequisites for a derivative action.  *See Moore v. Christ's Christian Fellowship Church, Inc.*, 875 N.E.2d 121 (Ohio Ct. App. 2007), *Carlson v. Rabkin*, 789 N.E.2d 1122 (Ohio Ct. App. 2003), *Sayyah v. O'Farrell*, No. CA2000-06-017, 2001 Ohio App. LEXIS 1914 (Ohio Ct. App. Apr. 30, 2001), *Howard v. Covenant Apostolic Church*, 705 N.E.2d 385 (Ohio Ct. App. 1997), *Russell v. United Missionary Baptist Church*, 637 N.E.2d 82 (Ohio Ct. App. 1994).

herein, and each director knew of this wrongdoing but failed to act in the face of a known duty to act.  For these reasons, Defendant Rooney faces a substantial likelihood of liability for her participation in these acts.  The sustained failure of the Fraternity Council to ensure effective corporate governance and ensure compliance with the mission and purpose of the Sorority can only have been a result of a knowing breach or reckless disregard of fiduciary duties.

104.   Although the Guide was disseminated by the Sorority as a resource, Defendant Rooney and the members of the Fraternity Council have treated the Guide as a change to the Sorority's membership rules.  Upon information and belief, Defendant Rooney and other members of the Fraternity Council regularly communicate through "GroupMe" to avoid oversight and potential discovery of their discussion of the changes to Kappa's membership requirements.  Defendant Rooney's active work to conceal the Fraternity Council's decision-making, when considered in combination with the Sorority's *ultra vires* decision to permit men to become members of the Sorority, demonstrates that the Fraternity Council actions have not been made in good faith and are contrary to the best interests of the Sorority.

158.   Dialogue has failed, so Plaintiffs seek relief from this Court. Plaintiffs ask for an injunction preventing Sorority officials from implementing their unlawful alterations to the Sorority's purpose and mission.  Plaintiffs seek to recover the costs the Sorority has incurred in promoting this unlawful change in its membership rules.  To the extent that discovery demonstrates that each member of the Fraternity Council has colluded in this effort, these individuals should be removed from their positions.  Plaintiffs ask this Court to declare that Defendants have violated their fiduciary duty . . .

166.   As a result of Defendant's behavior, Kappa Kappa Gamma has lost its identity as an organization for women.  . . .  Upon information and belief, the insistence on admitting men to the Sorority has also resulted in a significant decline in alumnae giving, membership, and participation.  These changes have also harmed the ability of Kappa Kappa Gamma chapters across the nation to recruit new members.

(*See* Declaration of Natalie McLaughlin ("McLaughlin Decl."), Ex. A, Wyom. Pl. Am. Compl. at ¶¶

89, 97, 98, 104, 158, 166.)  In fact, the derivative plaintiffs represented to the Wyoming District

Court in response to the motion to dismiss that the only reason the entirety of Fraternity Council

were not named defendants in the Wyoming Complaint at that stage was because "Plaintiffs named

only one member of the Fraternity Council to reduce the collateral consequences of the lawsuit on

third parties.  The law does not require more, but if there is a concern, Plaintiffs can sue more

Directors. The Plaintiffs are open to whatever direction is provided." (McLaughlin Decl., Ex. B, Pl. Resp. to Mot. to Dismiss Wyoming Case, p. 7, fn 2.)

Plaintiffs do not contest that they are in privity with the Wyoming plaintiffs, or that one shareholder can be barred by *res judicata* from raising the same derivative claim another court has rejected from a different shareholder. As noted previously, "*[r]es judicata* operates as a complete bar to any subsequent action on the same claim or cause of action *between the parties or those in privity with them*." *Brown v. City of Dayton*, 730 N.E.2d 958, 961 (Ohio 2000) (internal citation omitted) (emphasis in original).

Plaintiffs' attempt to avoid this result here fails because they cannot escape the reality that their derivative claims depend entirely on the Fraternity Council's ability to interpret[3] the term "woman" as it is used in Kappa's governing documents. That a decision on this issue is ***necessary*** to decide Plaintiffs' derivative claims is enough for the Court to invoke the doctrine of claim preclusion. *See Grant Fritzsche Enters. v. Fritzsche*, 667 N.E.2d 1004, (Ohio Ct. App. 1995) ("[e]ven where the cause of action is different in a subsequent suit, a judgment in a prior suit may still affect the outcome of the second suit"). Although Plaintiffs' "fraud" and "ultra vires" claims may require additional elements, each claim fails if the Court determines that the Fraternity Council acted within its lawful authority in interpreting the meaning of the term "woman." If the Fraternity Council acted within its power in interpreting the Bylaws—as the District Court of Wyoming held it did—it was necessarily not acting fraudulently or beyond its power. Thus, when the Wyoming

---

[3] Plaintiffs' suggestion that the Fraternity Council has "unilaterally redefined" the term "woman" is facially inaccurate given that all parties agree the term has *never* been defined in Kappa's governing documents.

plaintiffs lost on their derivative claim premised on the Fraternity Council's authority to interpret the term "woman," the current Plaintiffs became precluded from making the same argument.[4]

Plaintiffs' other tactic to avoid the results of the case they supported in Wyoming is to suggest that the Wyoming case was cabined to the events of the chapter at issue there.  (*See* Resp. to Mot. to Dismiss, ECF No. 26, PageID 340 ("the causes of action in the Wyoming Lawsuit relate specifically to the effect of Fraternity Council's actions on the membership in the Gamma Omicron Chapter in Wyoming").)  This argument ignores both the Wyoming District Court's opinion dismissing the case and the relief sought in the Wyoming complaint.  In responding to the motion to dismiss, the Wyoming derivative plaintiffs asked the court "to declare that the Officers, Directors, and other leaders of the Sorority cannot, without a formal change to Kappa Kappa Gamma's corporate charter, revise the Sorority's membership rules by fiat."  (Ex. B, Pl. Resp. to Mot. to Dismiss Wyoming Case, p. 16.)  Plaintiffs here advance the same argument that Fraternity Council cannot interpret Kappa's Bylaws to allow for the admission of transgender women without an amendment to the Bylaws.  (Resp. to Mot. to Dismiss, ECF No. 26, PageID 335–36.)

Both this case and the Wyoming case, at their core, concern the Fraternity Council's authority to interpret Kappa's Bylaws.  In an organization the size of Kappa, it is not unusual that some members may disagree with the decisions of leadership in matters of organizational governance.  Adopting Plaintiffs' argument to allow these derivative claims to proceed in this case would expose organizations to unending derivative litigation.  By altering the claims or suing only one officer at a time, a group of members of any organization could travel the country in search of a court that would allow them to proceed on derivative claims related to organizational decisions.

---

[4] Defendants' *res judicata* arguments apply to the derivative claims insofar as those claims concern Fraternity Council's interpretation of the term woman and subsequent admission of members based on that interpretation.  Defendants agree that the removal of members for policy violations was not litigated in the Wyoming case.  Plaintiffs' attempt to assert derivative claims based on the removal of Plaintiffs Levang and Tuck-Smith as members instead fails because removal of individual members is not a basis for derivative claims on behalf of the entire organization.  *See* p.14 *infra*.

Allowing derivative plaintiffs to bring successive duplicative suits across multiple jurisdictions so long as they tweak the precise slant of their arguments or sue different combinations of organizational leaders each time would bury organizations in litigation by effectively removing the protections of the *res judicata* doctrine.

> **B.** **The Statute of Limitations Bars the Derivative Claims**

The allegations in the Complaint enable the Court to reach the statute-of-limitations issue for Plaintiffs' derivative claims at this stage in the proceedings. Plaintiffs cite the Northern District of Ohio's decision in *Timken Co. v. Robert Bosch, LLC* for the proposition that "[g]enerally, a motion under Rule 12(b)(6), which considers only the allegations in the complaint, is an inappropriate vehicle for dismissing a claim based on the statute of limitations." (Resp. to Mot. to Dismiss, ECF No. 26, PageID 343 (quoting *Timken Co. v. Robert Bosch, LLC*, No. 5-22-CV-00530-AMK, 2023 U.S. Dist. LEXIS 99486, at *7 (N.D. Ohio Jun. 7, 2023)).) The Court will observe, however, that Plaintiffs left off *Timken*'s crucial modification of that general principle, offered in the very next sentence: "[h]owever, dismissal may be warranted if 'the allegations in the complaint affirmatively show the claim is time-barred.'" *Timken*, 2023 U.S. Dist. LEXIS 99486, at *7 (quoting *Cataldo v. US Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012)). Thus, given that Plaintiffs affirmatively allege that their claims are based on interpretations the Fraternity Council offered in 2015 and 2018, the Court can reach the statute-of-limitations issue.

For the breach-of-fiduciary-duty claim, the question before the Court is when Plaintiffs' interests were impaired by the alleged breach. *See Clemens v. Nelson Fin. Grp., Inc.*, No. 2015-Ohio-1232, 2015 Ohio App. LEXIS 1216, at *25 (Ohio Ct. App. Mar. 31, 2015). Plaintiffs argue that their interests were not impaired, at the earliest, until Kappa admitted a transgender woman in 2021. The focus of Plaintiffs' Complaint, however, is that the Fraternity Council acted to "redefine" the term "woman" in Kappa's Bylaws. This happened, per Plaintiffs' own allegations,

when the Council issued a statement on its interpretation of the term in 2015 and again in 2018.[5]  If issuing this statement was an improper rewriting of the Bylaws—which, as discussed throughout, it is not—that rewriting first occurred in 2015 and then again in 2018.  Either date is well outside the four-year statute of limitations.  The Court should not permit Plaintiffs to expand the statute of limitations every time the Fraternity Council acts consistently with the interpretation it announced nine years previously.

Plaintiffs also fail to establish that they are within the statute of limitations with regard to their fraud claim.  Plaintiffs' fraud claim is undermined by a logical fallacy.  It is premised on Fraternity Council allegedly misleading Kappa's membership on how it interpreted Kappa's Bylaws.  But the factual allegations in the Complaint are that the Fraternity Council publicly announced its interpretation several times.  (*See* Compl., ECF No. 1, ¶¶ 50, 52, 56.)  Those announcements put Plaintiffs on notice of the interpretation and started the clock on the statute of limitations.  "A cause of action for fraud . . . accrues either when the fraud is discovered, or [when] *in the exercise of reasonable diligence, the fraud should have been discovered*."  *Cundall v. US Bank*, 909 N.E.2d 1244, 1250 (Ohio 2009) (citations omitted) (emphasis added).  The purported fraud—interpreting Kappa's Bylaws to allow for the admission of transgender women—should have been discovered when the Fraternity Council publicly announced its exact interpretation in 2015.  The statute of limitations bars Plaintiffs' derivative claims.

---

[5] On the 2015 statement, Plaintiffs' Response to the Motion to Dismiss contradicts their own Complaint.  In the Response, they say it is "questionable" whether Fraternity Council actually released a statement on this issue in 2015 and that "Defendants incorrectly claim they informed the membership of their intentions through the 2015 position statement."  Plaintiffs' Complaint, however, affirmatively alleges that the Fraternity Council issued a position statement that stated the view that "women" in Kappa's Bylaws includes "individuals who identify as women."  (Compl., ¶ 50.)  The Court should consider the allegations in the Complaint above Plaintiffs' attempted repudiation of their allegation in briefing upon realizing its implications.

### C. Ohio Law Precludes the Derivative Claims on the Merits

Not only are Plaintiffs' derivative claims barred by *res judicata* and the statute of limitations, but they also fail to allege sufficient facts to state a claim for relief that is plausible on the merits. Per Kappa's governing documents, the Fraternity Council members are elected to govern the organization and the Council is charged with the duty of interpreting Kappa's Bylaws and other governing documents. (Standing Rule 5.1, Duties of Fraternity Council.) There is no obligation in the governing documents to discuss these interpretations or have Kappa's membership vote on them. In an organization of Kappa's size, doing so would be impractical and paralyzing. Nor do the governing documents impose upon the the Fraternity Council an obligation to share its interpretations in any specific manner. Plaintiffs' vague assertion that Fraternity Council should have been more "transparent" in how it interpreted the Bylaws is belied both by the fact that Plaintiffs cannot point to any obligation to hold a discussion about this interpretation, vote upon this interpretation, or share this interpretation in some particular format. And even if they could, Plaintiffs concede that the Fraternity Council repeatedly and publicly announced its exact interpretation of the term "woman" to Kappa's members.

The derivative Plaintiffs' response demonstrates that, like the derivative plaintiffs in the Wyoming case, they cannot overcome the deference Ohio law affords voluntary organizations in conducting their own affairs. Plaintiffs also cannot demonstrate facts in their Complaint that support an actionable derivative claim for fraud or a basis to pursue a derivative claim on behalf of the entire membership based on the dismissal of two members who violated Kappa policy. That Plaintiffs believe a different interpretation would be preferable or better serve Kappa's long-term interests does not provide a basis for the Court to step in and dictate to a voluntary organization how it must conduct its affairs.

          i.   <u>Principles of Deference Under Ohio Law Preclude Plaintiffs' Breach of</u>
<u>Fiduciary Duty Claim</u>

To save their claim for breach of fiduciary duty, Plaintiffs invent a duty of the Fraternity Council to "provide notice and transparency to members." (Resp. to Mot. to Dismiss, ECF No. 26, PageID 345.) What Plaintiffs believe this duty entails is not entirely clear. But, more importantly, it is not actually found in Ohio law or Kappa's governing documents. The provisions of Ohio law that Plaintiffs cite in explaining Fraternity Council's duties actually provide that Fraternity Council (1) "[does] all things permitted by law and exercise[s] all authority within the purposes stated in its articles or incidental to those purposes"; and (2) "shall perform [its] duties . . . in good faith, in a manner [it] reasonably believes to be in or not opposed to the best interests of the corporation and with the care that an ordinarily prudent person in a like position would use under similar circumstances." *See* Ohio Rev. Code §§ 1702.12(F)(9) and 1702.30(B).

In Defendants' Motion to Dismiss, Defendants set out the well-established standard of judicial deference that Ohio law affords to voluntary organizations in interpreting their own governing documents. A voluntary organization may make and interpret its own bylaws without interference from the courts, and "its right to interpret and administer the same is as sacred as the right to make them." *Stibora v. Greater Cleveland Bowling Ass'n*, 577 N.E.2d 1175, 1179 (Ohio Ct. App. 1989). Indeed,

> courts will not assume to act in place of those authorized to interpret the constitution and by-laws of a voluntary association unless those upon whom the duty is placed acted in an ***arbitrary and unreasonable*** manner. This is also true with respect to the determination of all questions of policy and internal management.

*Wellendorf v. Chauffeurs, Teamsters, etc., Local Union*, No. 377, No. 87 C.A. 37, 1988 Ohio App. LEXIS 2166, at *17 (Ohio App. 1988) (emphasis added) (finding that the union's construction of its own governing documents was reasonable and deferring to this interpretation) (citing *Finlay v. Duffy*, 94 N.E.2d 466, 469 (Ohio Ct. App. 1950)). The term "arbitrary" has been defined as

"without adequate determining principle . . . not governed by any fixed rules or standard." *Ulliman v. Ohio High Sch. Ath. Ass'n*, 919 N.E.2d 763, 773 (Ohio Ct. App. 2009) (quoting *City fo Dayton ex rel. Scandrick v. McGee*, 423 N.E.2d 1095, 1097 (Ohio 1981)).

Plaintiffs' suggestion that the requirement of judicial deference for voluntary organizations would not apply because Kappa has "NOT" agreed on rules as to how it conducts its business (Resp. to Mot. to Dismiss, ECF No. 26, PageID 345) is, of course, demonstrably false. Plaintiffs appended Kappa's Bylaws and Standing Rules to their Complaint. Among other provisions, those governing documents vest the Fraternity Council with the duty of "Interpreting the Fraternity Bylaws and Standing Rules." (Standing Rule 5.1, Duties of Fraternity Council.) Plaintiffs do not contest that "women" is not defined in the Bylaws. And Fraternity Council is given the duty under the Standing Rules to interpret the Bylaws and is entitled to judicial deference under Ohio law in their interpretation unless Plaintiffs show the interpretation is arbitrary and unreasonable. Though Plaintiffs disagree with that interpretation, interpreting the term "women" to include transgender women is not arbitrary and unreasonable when so many other sources have recognized this interpretation. (*See* Mot. to Dismiss, ECF No. 23, PageID 314–15.)

Furthermore, to the extent the breach-of-fiduciary-duty claim is premised on "special treatment" allegedly afforded to transgender members of Kappa, there is also a presumption that all members of Fraternity Council acted in good faith and in the best interest of the organization. *See Brosz v. Fishman*, 99 F. Supp. 3d 776, 785 (S.D. Ohio 2015) (citing *Drage v. Proctor & Gamble*, 694 N.E.2d 479, 482 (Ohio Ct. App. 1997)). This is because Plaintiffs, who attached Kappa's governing documents to their Complaint, have not identified anything in the governing documents that precludes admitting the transgender woman as an alumnae member or initiating the transgender woman who joined Kappa's chapter at the University of Wyoming. As recognized by the District Court in Wyoming, because nothing in Kappa's Bylaws prohibits membership of transgender

women, were a federal court to force a private voluntary organization to exclude transgender women from its membership, it would fundamentally alter Kappa's expressive message in violation of the First Amendment. *Westenbroek v. Kappa Kappa Gamma Fraternity*, No, 23-CV-51-ABJ, 2023 U.S. Dist. LEXIS 152458, at *29–*36 (Aug. 25, 2023). Moreover, Plaintiffs do not identify anything that was violated by allowing the transgender alumna member to hold a leadership position. Plaintiffs do not cite any authority for the proposition that it is the business of the federal courts to adjudicate who should be able to join a voluntary organization or ascend to leadership positions in a voluntary organization.

The Court's analysis therefore returns to the question of whether the body charged with interpreting the Bylaws was permitted to interpret the meaning of an undefined term—"woman"—contained therein. Plaintiffs do not address the cases that limit courts' ability to step in as the arbiter of internal disputes within an organization as to how a bylaw is best interpreted. *See Redden v. Alpha Kappa Alpha Sorority, Inc.*, No. 1:09CV705, 2010 U.S. Dist. LEXIS 822, at *14 (S.D. Ohio Jan. 6, 2010) (internal citation omitted) (courts do not step in absent "some palpable violation of the constitution or laws of the corporation"). Plaintiffs also do not substantively respond to the various sources Defendants cited demonstrating that interpreting the term "women" to include transgender women is reasonable, only offering the conclusory assertion (in a footnote) that "Plaintiffs and other women know exactly what the term 'woman' means." (Resp. to Mot. to Dismiss, ECF No. 26, PageID 346.)

Plaintiffs instead argue that interpreting an undefined term in the Bylaws was tantamount to rewriting the Bylaws and that Fraternity Council's interpretation is invalid because it did not put the interpretation to a vote of all Kappa's members. Plaintiffs do not cite any provision of Kappa's Bylaws that requires such a vote or that sets standards for the "critical" disclosure and transparency that Fraternity Council did not meet. And, once again, per Plaintiffs' own allegations, Fraternity

Council shared its interpretation in 2015, 2018, and 2022. Finally, Defendants Kappa and Rooney did not argue in the Wyoming litigation that the 2022 FAQ document was intended to rewrite the Bylaws, as Plaintiffs suggest. Rather, they noted, in response to an argument made by the derivative plaintiffs on appeal that the court should strictly interpret Kappa's Bylaws under a supposed 1870s understanding of language, that the Bylaws currently in effect were ratified in 2022 and, in 2022, the term "woman" has a different meaning than what the plaintiffs had contended it had in 1870. (McLaughlin Decl., Ex. C, 10th Cir. Appellees Br., pp. 33–36.) Neither Kappa nor its Fraternity Council has ever argued that the Bylaws needed to be or were intended to be amended for Kappa to adopt an inclusive interpretation of the terms of the governing documents.

Plaintiffs do not seriously contest any of the core arguments offered by Defendants as to why the breach-of-fiduciary-duty claim fails on the merits. Instead, they invent new duties for the Fraternity Council that are not found anywhere in Kappa's governing documents or Ohio law. In the end, their argument boils down to the contention that they believe Kappa allowing for admission of transgender women is bad for Kappa, but that sort of policy decision in an internal organization is not in the purview of the federal courts. The Court should dismiss the claim.

ii.    Plaintiffs Fail to Allege Facts that Would Support a Derivative Fraud Claim

Plaintiffs fail to respond to the basic argument that, in order to assert a claim of fraud for failure to disclose information, they were required to establish an affirmative obligation to disclose the information in question. *See Federated Mgmt. Co. v. Coopers & Lybrand*, 738 N.E.2d 842, 854 (Ohio Ct. App. 2000) ("a duty to disclose is a requirement if concealment of fact is alleged as a basis for fraud").[6] Instead, Plaintiffs make generalized accusations about dishonesty, bad faith, and concealing of Fraternity Council's view.

_____

[6] Plaintiffs' passing reference to the "duty of disclosure" cited in *Zalvin v. Ayers*, 157 N.E.3d 256, 265 (Ohio Ct. App. 2020), has no relevance to this claim. The duty to disclose referenced in that case arises "when a corporation seeks shareholder approval of fundamental corporate changes, such

At the risk of sounding repetitive, these arguments once again fail to respond to the undisputed fact that Fraternity Council has repeatedly publicized its interpretation of the term "woman" for nearly a decade. If publicizing the interpretation at least three times (as the Complaint alleges Fraternity Council did) was not enough to avoid an allegation of unlawfully failing to disclose it, Plaintiffs do not explain how many announcements of the interpretation would suffice under the law. Their allegation that they were "duped" into donating money to a non-party organization "without any indication that Fraternity Council determined that" the meaning of "women" included transgender women is flatly wrong. Fraternity Council made several direct statements of its interpretation of the term, and Plaintiffs' ignorance of that fact cannot form a basis for a claim of fraud. Even less so when the claim is premised on a failure to disclose information, and Plaintiffs cannot point to any affirmative duty to disclose or any dishonest statement by Fraternity Council.

> iii. Plaintiffs Cannot Assert Derivative Claims Based on the Dismissal of Two Members

Plaintiffs' final substantive derivative claim—asserted on behalf of all Kappa members—is that Fraternity Council acted improperly in dismissing Plaintiffs Levang and Tuck-Smith. This is based on an ambiguous contention that other members might be chilled in challenging what they see as improper conduct because these two women were dismissed. As cited previously, claims related to a particular person's exclusion from membership are direct claims, not derivative ones. *See Carlson v. Rabkin*, 789 N.E.2d 1122, 1128 (Ohio Ct. App. 2003). Plaintiffs do not allege a concrete injury to the organization beyond what they speculate other members may glean from these dismissals. The removal of Plaintiffs Levang and Tuck-Smith from Kappa's membership, to the extent actionable at all, is a matter to be decided in their individual claims, not on behalf of the

---

as a merger." *Zalvin*, 157 N.E.3d at 265. This principle of securities law has no bearing on Plaintiffs' claims for a private voluntary organization's interpretation of Bylaws.

entire organization.  Any other result would expose any number of ordinary governing actions by an organization's directors to derivative litigation based on speculation about what others may infer from the action.

II.     **Plaintiffs Levang and Tuck-Smith Fail to State Claims Related to Their Dismissal from Kappa**

      A.     **Levang and Tuck-Smith Have No Claim for Improper Dismissal Because Kappa Afforded Them Due Process and Plaintiffs Did Not Deny the Underlying Allegations of Misconduct**

Plaintiffs do not dispute that Kappa has an established policy for dismissing its members, or that Kappa followed that process in dismissing Levang and Tuck-Smith.  And, as was the case when Levang and Tuck-Smith first responded to the allegations against them, Plaintiffs do not dispute the underlying conduct.  Specifically, they do not deny that Levang and Tuck-Smith used member contact information to solicit funds and raise awareness of a lawsuit that was not only brought against Fraternity Council members who were allegedly acting unlawfully but also against Kappa itself, along with one of Kappa's collegiate members.  They do not deny that they sent communications about a Kappa member suggesting she was predatory and unsafe.  In fact, they state that they had a "right to discriminate" against the student in question.  At this point, there are no facts left to dispute.  These former members admit to conduct that violates policies and were afforded the due process to which they were entitled.

Plaintiffs' contention that Levang and Tuck-Smith's dismissals were bad-faith attempts to silence dissent falls flat in light of the surrounding context.  Plaintiffs cannot explain why Kappa removed only the two of them who dissented from Kappa's position.  Indeed, Plaintiffs make no suggestion that Kappa has tried to remove the other Plaintiffs in this case or any of the plaintiffs in the Wyoming case.  If Kappa was trying to root out dissent instead of policy violations, would it not have started with members who had sued Kappa in federal court?

15

Moreover, the dismissal was not "swift and severe," as Plaintiffs suggest. The documents they attached to the Complaint demonstrate that Levang and Tuck-Smith were warned about their behavior and nonetheless persisted in it. When confronted with allegations that other members had complained, Levang and Tuck-Smith each responded defiantly, taking the opportunity to complain about Kappa's inclusive policy instead of responding to the merits of the allegations. They had every opportunity to respond to the allegations or correct their behavior and chose not to do so. Under Plaintiffs' theory, they should have been granted carte blanche to violate Kappa's policies in the name of expressing opposing viewpoints simply because they took a view opposing Fraternity Council's actions. There is no case law supporting this novel idea that if a member disagrees with a board's actions, she can violate the organization's policies, but be protected from punishment by claiming she was challenging the propriety of the board's actions. To grant a member this protection would paralyze a board from holding its members accountable for policy violations and open the floodgates to frivolous litigation. The Court should dismiss their claim for improper termination of membership.

### B. Levang and Tuck-Smith Have No Contractual or Quasi-Contractual Right to Kappa Membership

Plaintiffs' arguments on the contractual and quasi-contractual claims related to Levang and Tuck-Smith's dismissals largely track the allegations in the Complaint. They do not respond to Ohio law that provides that an organization does not breach its contract with its members in its Bylaws when it follows its own procedures for disciplining a member. *See Williams v. NAACP*, 135 N.E.3d 1260, 1267 (Ohio Ct. App. 2019). Instead, Plaintiffs expound on Levang and Tuck-Smith's purported contributions to Kappa. But there is no proposition of law that says an organization cannot enforce its disciplinary processes against longtime members or members who previously held leadership positions. Without a response to the law that allowed Kappa to effectuate these

16

dismissals pursuant to the policies in its governing documents, the Court should dismiss the breach-of-contract claim.

Defendants acknowledge that, in some cases, allowing a plaintiff to plead a promissory estoppel claim as an alternative to a breach-of-contract claim may be proper. But here, the promissory estoppel claim is premised on the same promises as are contained in the contract that forms the basis for the breach-of-contract claim. Plaintiffs do not allege that some other promise of lifetime membership was made to Levang and Tuck-Smith aside from what was contained in the documents at issue in the breach of contract claim. The Bylaws explicitly state that members can be dismissed for policy violations. (Bylaws, ECF No. 1-2, PageID 60.) Promissory estoppel claims must be dismissed if they contradict an unambiguous written contract. *Prime Invs., LLC v. Altimate Care, LLC*, No. 2022-Ohio-1181, 2022 Ohio App. LEXIS 1071, at *19 (Ohio Ct. App. 2002). Therefore, the Court should dismiss this claim as well.

### C. Levang and Tuck-Smith's Defamation-Per-Se Claim Is Frivolous

Levang and Tuck-Smith's defamation-per-se claim is premised on the claim that Kappa would have, pursuant to its policies, communicated that the two women had been dismissed for violation of Kappa policies. This communication, which Plaintiffs assume occurred, would have been 100% true. Levang and Tuck-Smith *were* dismissed for violating Kappa policy. The Court knows this to be true because they challenge that dismissal in this case. There is no dispute that the two women were dismissed or that the stated basis for dismissal was the violation of Kappa policy. And those are the facts that would have been included in the statement allegedly made. This Court is not required to accept conclusory allegations as true at the motion to dismiss stage, only factual ones. And there is clearly no false statement alleged for the defamation-per-se claim.

Furthermore, it is worth noting that this statement that Plaintiffs assume occurred would have been a communication made pursuant to an obligation under the governing documents, and

therefore would be privileged against a defamation claim.  "A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right or interest.  *The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only*."  *Hahn v. Kotten*, 331 N.E.2d 713, 718–19 (Ohio 1975) (emphasis in original).  "The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty."  *Id.* at 719–20 (citations omitted).  Whether or not a publication was privileged is a question of law to be decided by the Court.  *McCartney v. Oblates of St. Francis deSales*, 609 N.E.2d 216, 223 (Ohio Ct. App. 1992) (citations omitted).  The privilege applies when someone makes a statement under a duty to inform others about a decision.  *Hahn*, 331 N.E.2d at 722 (applying privilege to statement made pursuant to a duty to inform).

Here, Levang and Tuck-Smith allege that the statement in question they think was made would have been a communication about the termination of their membership.  In addition to being true, this statement would be privileged against a defamation claim.

### D.     Levang and Tuck-Smith's Free-Speech Claim Is Even More Frivolous

The last substantive claim in the Complaint is Levang and Tuck-Smith's claim for violation of their free speech rights.  If there were any doubt that the claim was frivolous, that doubt was resolved when the only arguments Plaintiffs could offer in support were (1) the Court should not follow binding precedent of the Ohio Supreme Court on questions of Ohio law; or (2) the Court should certify a question to the Ohio Supreme Court that it has already conclusively decided.  Ohio

law on this point is clear and there is no basis for allowing Plaintiffs to proceed with this free-speech claim.

Plaintiffs' response for their free-speech claim amounts to an extensive discussion as to why the Ohio Supreme Court's decision in *Eastwood Mall v. Slanco*, 626 N.E.2d 59, 61 (Ohio 1994), was wrong. Plaintiffs make textual arguments, point to decisions on similar issues from other cases and Ohio courts before *Eastwood Mall*, and even discuss Alexis de Tocqueville. The thesis of all this is that the Ohio Constitution should protect their speech to the point of allowing them to sue a private organization when that organization takes action based on offensive speech that violates the organization's policies. The arguments reflect a recent trend of people misunderstanding the right to free speech to encompass a right to quash criticism of or avoid consequences from speech, and none of it is particularly compelling. But even if it were, it would not matter, because, as for the Ohio Constitution, the question is resolved.

*Eastwood Mall*'s holding is unambiguous: "while Section 11 [of Article I of the Ohio Constitution] has an additional clause not found in the First Amendment, the plain language of this section, when read in its entirety, bans only the passing of a law that would restrain or abridge the liberty of speech," and its protections are "no broader than the First Amendment." *Eastwood Mall*, 626 N.E.2d at 61. "The Ohio Supreme Court's determinations on questions of Ohio law are of course binding on this Court." *Stolz v. J & B Steel Erectors, Inc.*, 439 F. Supp. 3d 980, 985 (S.D. Ohio 2020). It is therefore unclear how Plaintiffs arrive at the conclusion that the Court need not overrule *Eastwood Mall* to allow a free-speech claim to proceed without state action. No federal court has authority to depart from this holding, and allowing Plaintiffs' free-speech claim to proceed would be an outright rejection of the precedent.

Plaintiffs' suggestion that the Court could instead certify the question to the Ohio Supreme Court in hopes that it will suddenly reverse *Eastwood Mall* is also unavailing. The Ohio Supreme

Court accepts certification of questions of Ohio law from federal courts under limited circumstances. Specifically, "[t]he Supreme Court may answer a question of law certified to it by a court of the United States. This rule is invoked if the certifying court, in a proceeding before it, issues a certification order finding there is a question of Ohio law that may be determinative of the proceeding *and for which there is no controlling precedent in the decisions of this Supreme Court*." *Tri County Wholesale Distribs. v. Labatt USA Operating Co., LLC*, No. 2:13-CV-317, 2014 U.S. Dist. LEXIS 904, at *5 (S.D. Ohio Jan. 6, 2014) (quoting Ohio S. Ct. Prac. R. 9.1(A)) (emphasis added). Here, there is controlling precedent, so certification is inappropriate. The process exists for federal courts to hear from state supreme courts when a question of state law reaches the federal court before the state court has an opportunity to resolve it, not for federal courts to suggest to the state supreme court that it may have been wrong in a prior decision.

The free-speech claim has zero basis in law. The Court should dismiss it.

## CONCLUSION

For these reasons and those argued in the initial briefing, Defendants respectfully request that the Court grant the Motion to Dismiss in its entirety.

Respectfully submitted,

*/s/ Natalie M. McLaughlin*
Natalie M. McLaughlin (0082203)
Trial Attorney
Brian W. Dressel (0097163)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
(614) 464-5452
nmmclaughlin@vorys.com
bwdressel@vorys.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed with the U.S. District Court, Southern District of Ohio, on May 6, 2024, and served upon all parties of record via the Court's electronic filing system.

/s/ *Brian W. Dressel*
Brian W. Dressel