# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Patsy Levang, *et al.*,

    Plaintiffs,

v.

Kappa Kappa Gamma Fraternity, *et al.*,

    Defendants.

Case No. 2:24-cv-316

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Kappa Kappa Gamma Fraternity ("the Fraternity"), President Mary Pat Rooney ("Rooney"), Vice President Maria Brown, Vice President Nancy Campbell, Vice President Barb Goettelman, Vice President Liz Wong, Treasurer Kyle Donnely, and Panhellenic Delegate Beth Black (together, "Fraternity Council" and, collectively with the Fraternity, "Defendants") move to dismiss Patsy Levang's ("Levang"), Cheryl Tuck-Smith's ("Tuck-Smith"), Susan Jennings's ("Jennings"), Margo Knorr's ("Knorr"), Karen Pope's ("Pope"), and Ann Witt's ("Witt," collectively, "Plaintiffs") Complaint. Mot. Dismiss, ECF No. 23. This case was stayed pending an appeal of *Westenbroek v. Kappa Kappa Gamma Fraternity*, No. 23-CV-51-ABJ, 2023 WL 5533307 (D. Wy. Aug. 25, 2023), to the United States Court of Appeals for the Tenth Circuit. For the following reasons, the Court **LIFTS** the stay and **ORDERS** the parties to show cause.

## I. FACTS

For today's purposes, Plaintiffs' 241-paragraph Complaint can be summarized as follows. The Fraternity was formed in 1870 as a women's-only organization whose current mission is, in part, to "unite women to learn, grow, and inspire positive change throughout their lives." Compl. ¶¶ 20, 22, 27, ECF No. 1. The Fraternity's bylaws, Standing Rules, and policies restrict membership to "women." *Id.* ¶¶ 41, 43, 45–46. Its Articles of Incorporation also demonstrate that the Fraternity is meant only for women. *Id.* ¶ 39.

Levang and Tuck-Smith were, and Jennings, Knorr, Pope, and Witt still are, alumnae members of the Fraternity. *Id.* ¶¶ 1, 5. Rooney, Brown, Campbell, Goettelman, Wong, and Donnelly were elected to the Fraternity Council; Black is the Fraternity's delegate to the National Panhellenic Conference and is an ex-officio member of the Fraternity Council. *Id.* at intro.; *id.* ¶ 16.

In 2015, the Fraternity Council issued a position statement that stated the Fraternity was a "single gender organization comprised of women and individuals who identify as women[.]" *Id.* ¶ 50. In 2018, the Fraternity issued a "Guide for Supporting our LGBTQIA+ Members" ("Guide"), which likewise referred to the Fraternity as a "single gender organization comprised of women and individuals who identify as women." *Id.* ¶¶ 52–53. In 2022, the Fraternity issued a document addressing frequently asked questions ("FAQs"), which identified the Fraternity as a "single-gender organization comprised of women and individuals who identify as women[.]" *Id.* ¶ 57.

Changes to the Fraternity's bylaws require a two-thirds vote by a Convention, and changes to the Fraternity's Standing Rules require either a majority vote or two-thirds vote at the Convention (depending on whether the change is made with or without notice). *Id.* ¶¶ 61, 63. Neither the 2015 position statement, the 2018 Guide, nor the FAQs were voted upon. *Id.* ¶¶ 54, 58, 61.

In 2021, the University of Wyoming Gamma Omicron Chapter of the Fraternity initiated and admitted a transgender woman, and Defendants encouraged her recruitment. *Id.* ¶¶ 77–78. Several collegiate members of the Wyoming Gamma Omicron Chapter brought a derivative suit in the District Court for the District of Wyoming challenging admission of the transgender woman. *Id.* ¶¶ 83–84; *Westenbroek v. Kappa Kappa Gamma Fraternity*, No. 23-CV-51-ABJ, 2023 WL 5533307 (D. Wy. Aug. 25, 2023).

Levang and Tuck-Smith sent emails to various Fraternity alumna, in support of the plaintiffs in *Westenbroek*, and were eventually expelled from the Fraternity. Compl. ¶¶ 86–87, ECF No. 1.

Further, a transgender woman was admitted as an alumna member in 2021 and was "fast-tracked" into a leadership position with the Fraternity. *Id.* ¶¶ 65–72.

Plaintiffs believe that transgender women are "men", that transgender women therefore do not meet the criteria for membership in the Fraternity, and that, by permitting admission of transgender women, Defendants have "expanded" the membership criteria without going through the proper process for

changing the Fraternity's Articles of Incorporation, bylaws, Standing Rules, and policies. They contend such *ultra vires* actions amount to a violation of Defendants' fiduciary duties, as well as the Fraternity's bylaws, Standing Rules, and Articles of Incorporation, so Jennings, Knorr, Pope, and Witt bring a derivative suit similar to that brought in *Westenbroek*. Levang and Tuck-Smith bring direct claims challenging their expulsion from the Fraternity.

Defendants, for their part, argue that Fraternity Council has not "expanded" the admission criteria to permit admission to men—membership is still restricted to "women," they contend, and "women" include transgender women. Defendants argue they have not only the prerogative, but also the duty, to interpret and define the term "woman" or "women" as it is used in the Fraternity's Articles of Incorporation, bylaws, Standing Rules, and policies, and that they need not submit their interpretation or definition to a vote by the Fraternity's members.

## II. STATEMENT OF JURSDICTION

As a preliminary matter, the Court has diversity jurisdiction over at least the derivative claims in this case. That is, Jennings, Knorr, Pope, and Witt are citizens of different states than the Fraternity, Rooney, Brown, Campbell, Goettelman, Wong, Donnell, and Black. See Compl. ¶¶11–16, ECF No. 1; *cf. Smith v. Sperling*, 354 U.S. 91, 96 (1957) (concluding that, in a derivative suit, although the complaint is brought by shareholders on behalf of the corporation, the corporation is properly aligned as a defendant for diversity of jurisdiction

purposes if the corporation's management is antagonistic to the shareholders).

Moreover, the Complaint arguably alleges the Fraternity has lost over $75,000 from decreased financial donations because of Fraternity Council's complained-of actions.[1] *Id.* ¶¶ 134, 173, 180.

It is not clear, however, whether the Court has independent jurisdiction over Levang's and Tuck-Smith's direct claims or has only supplemental jurisdiction over the same. *See Naji v. Lincoln*, 665 F. App'x 397, 400 (6th Cir. 2016) ("A single plaintiff may aggregate his separate claims against a single defendant, but the traditional judicial interpretation . . . has been from the beginning that the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement." (cleaned up)); *Siding and Insurlation, Co. Inc. v. Acuity Mut. Ins. Co.*, 754 F.3d 367, 370–72 (6th Cir. 2014). Plaintiffs are **ORDERED** to include within the notice required by ECF No. 28 an explanation as to the bases of this Court's jurisdiction over Levang's and Tuck-Smith's claims. To the extent Plaintiffs rely solely on supplemental jurisdiction, the notice shall so state. To the extent Plaintiffs believe independent jurisdiction exists, they shall fully explain all purported bases for the same.

---

[1] Accordingly, the Court need not consider whether the Fraternity's legal expenses—caused by Plaintiffs hailing the Fraternity into court to bring these derivative suits—can satisfy the amount-in-controversy requirement. *See* 28 U.S.C. § 1332(a)(1) (noting the amount-in-controversy requirement is "exclusive of interest and costs"); *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) ("As a general rule, attorneys' fees are excludable in determining the amount in controversy for purposes of diversity, unless the fees are provided for by contract or where a statute mandates or expressly allows the payment of such fees." (citation omitted)).

## III. STANDARD OF REVIEW[2]

A claim survives a motion to dismiss under Rule 12(b)(6) if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). This standard "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [unlawful conduct]." *Twombly*, 550 U.S. at 556. A pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the [pleading] are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted). At the motion to dismiss stage, a district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022) (internal quotation marks and citations omitted). However, the non-moving party must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

---

[2] The Court accepts Plaintiffs' factual allegations as true for the purposes of Defendants' motion. *See Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022).

## IV. ANALYSIS

Defendants offer myriad reasons for dismissal. As to the derivative claims, Defendants first argue they are barred by *res judicata* given the district court's decision in *Westenbroek v. Kappa Kappa Gamma Fraternity*, No. 23-CV-51-ABJ, 2023 WL 5533307 (D. Wy. Aug. 25, 2023). Second, they argue the claims are barred by the statutes of limitations. Third, they contend the Complaint fails to state a derivative claim. Fourth, Defendants assert the civil conspiracy claim fails absent an underlying tort.

As to Levang's and Tuck-Smith's direct claims, Defendants first argue that every claim challenging their expulsion fails because the Complaint affirmatively demonstrates Levang and Tuck-Smith were afforded due process prior to being expelled from the Fraternity. Second, Defendants contend Levang's and Tuck-Smith's free-speech claims are baseless because the Ohio Constitution's free speech clause cannot be enforced against private actors. Third, they argue the defamation claim fails because the Complaint admits that any statement Defendants made was true.

The Court considers the derivative claims and then proceeds to the direct claims.

### A. Derivative Claims

As current Fraternity members, Jennings, Knorr, Pope, and Witt bring the following derivative claims on behalf of the Fraternity against Fraternity Council: (1) breach of fiduciary duty; (2) ultra vires; (3) fraud; (4) civil conspiracy.

### 1. *Res Judicata*

The parties briefed preclusion under Ohio law. Mot. Dismiss 8–10, ECF No. 23; Resp. 4–8, ECF No. 26; Reply 3–, ECF No. 27. Although that approach has facial appeal given that Ohio provides the substantive law applicable to the merits of the claims, the Court is not yet convinced that Ohio law governs the preclusion analysis.

The *Westenbroek* federal district court was exercising diversity jurisdiction over the Ohio-law claims brought by the plaintiffs in that case. *See Westenbroek*, 2023 WL 5533307, at *5. "[F]ederal common law governs the claim-preclusive effect of a dismissal by a federal court sitting in diversity." *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001) (citation omitted); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) (citing *Semtek Int'l Inc.*, 531 U.S. at 508). But, "'for judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the *rendering* court sits,'" unless the state law is incompatible with federal interests. *Taylor*, 553 U.S. at 891 n.4 (citing *Semtek Int'l Inc.*, 531 U.S. at 508) (emphasis added).

The *Westenbroek* court was the rendering court, and it sat in Wyoming. It seems, then, that this Court must apply Wyoming's preclusion rules to determine what preclusive effect the *Westenbroek* district court decision has on this Court.[3]

---

[3] This Court has not found any caselaw answering whether it should apply the preclusion law of the state where the first federal court sat in diversity even if, as here, that state's law was not the substantive law the first federal diversity court applied.

*Semtek Int'l Inc.*, 531 U.S. at 508; *see also Malmacher v. Jesse*, 786 F. App'x 558, 564 n.1 (6th Cir. 2019) (applying California law because the putatively preclusive suit was rendered in a district court situated in California); *Eagle Express, Inc. v. Paycor, Inc.*, No. 1:23-CV-655, 2024 WL 1874966, at *3 (S.D. Ohio Apr. 30, 2024) ("In short, as a matter of federal law, the federal diversity court's dismissal obtains whatever claim-preclusive effect it would have had as a matter of state law, had the dismissal instead occurred in a state court located in the state in which that federal court sits.").

The parties are thus **ORDERED TO SHOW CAUSE** as to why the preclusive effect of *Westenbroek* should not be analyzed under Wyoming law. The parties' briefs on this issue shall not exceed **TEN PAGES** and shall be filed by July 12, 2024. If the parties agree that Wyoming law should apply, they shall include a proposal for a schedule to re-brief the preclusion issue under that law.

## V. CONCLUSION

For the above reasons, the parties shall brief the issue of which state's law applies to the preclusion issue and, if appropriate, propose a briefing schedule. In the alternative, if the Tenth Circuit's dismissal for lack of a final appealable order leads to an agreement that the district court opinion is not preclusive under any applicable preclusion law, Defendant may withdraw its preclusion argument.

**IT IS SO ORDERED.**

*/s/ Michael H. Watson*
**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**